# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

ERIC JOHN GUILBEAU                           CIVIL ACTION NO. 05-1399

VS.                                          SECTION P

BURL CAIN, WARDEN                            JUDGE DOHERTY

                                             MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed on August 8, 2005 pursuant to 28 U.S.C. § 2254 by *pro se* petitioner Eric John Guilbeau.   Guilbeau is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, in Angola, Louisiana where he is serving a life sentence imposed following his 2002 second degree murder convictions entered in the Twenty-Seventh Judicial District Court, for St. Landry Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

On April 24, 2002, petitioner was indicted by the St. Landry Parish Grand Jury and charged with two counts of second degree murder for killing Jamie Chautin and her father

1

Tony Chautin.  The underlying facts of the case were recited by the Third Circuit Court of

Appeal in its unpublished opinion of October 8, 2003:

> In the early morning hours of March 3, 2002, the Defendant,
> Eric John Guilbeau, entered the residence of Jamie Chautin,
> whom he had previously lived with and had a child with.
> Jamie Chautin and her ex-husband, Shaun Peck[1], were
> sleeping in Jamie's bedroom. Jamie's mother, Kathleen
> Chautin, slept in the bedroom across the hall. Jamie's father,
> Tony Chautin, Brock Taylor, Brock's sister, and Alexis Peck,
> Jamie and Shaun's daughter, were sleeping in the living room.
>
> After discovering Jamie and Shaun sleeping in the same
> bedroom, Defendant fired several shots with a twelve-gauge
> shotgun. Tony Chautin was shot in the kitchen and
> subsequently pronounced dead at the scene. Jamie Chautin
> was also shot. She was transported by air to the hospital, but
> was later pronounced dead. [*See* Exhibit H-122, *State of
> Louisiana v. Eric John Guilbeau*, 03-0372 (La. App. 3d Cir.
> 10/8/2003)(unpublished)].

On May 14, 2002, petitioner filed a Motion in *Limine* seeking exclusion of certain

hearsay statements allegedly made by one of the victims, Jamie Chautin, to her employer,

Tony Garcia.[2] [Exhibit B].   Among other things, petitioner objected to the introduction of

these statements because,

> Admission of the hearsay statements of Jamie Chautin would
> violate the defendant's constitutional right to confront and
> cross-examine the witnesses against him. Jamie Chautin
> would not be available for cross examination, and therefore,
> her statements allegedly made to Mr. Garcia could not be
> questioned or explored to any extent through cross
> examination.  [Exhibit B-24].

---

[1] Elsewhere spelled "Shawn."

[2] Elsewhere identified as Antonio Garcia or Anulfo Antonio Garcia.

On June 28, 2002 a hearing was held on the Motion in *Limine*.  At the hearing, the

prosecutor noted,

> ... this evidence [statement to Mr. Garcia] is relevant because
> the defendant has made Jamie's state of mind an issue in this
> case. Basically in his statement to the police, and also in his
> brief, he has indicated that he and Jamie were in a harmonious
> and loving relationship following their break-up six months
> earlier and that they intended to reconcile and was always
> their intent to reconcile. However, the statements that Mr.
> Garcia has presented indicate that it was anything but. In fact,
> Jamie had indicated to him that he made her sick, that he had
> threatened to harm her. He had threatened to harm Shaun, and
> that he had also threatened to harm her father because she
> refused to reconcile with her as he expected. ... I do not intend
> to introduce this evidence in my case in chief. However, I
> intend to offer it as rebuttal evidence to anything that the
> defense would present that would present them as being in
> this harmonious and loving relationship ...  [Exhibit E-64-65].

Petitioner's attorney argued,

> ... there's also another issue in this case that's before the
> Court is the right of confrontation and I think if the Court is
> on the fence on this issue, the constitutional right of
> confrontation should decide the issue in the defendant's favor.
> These are hearsay statements coming in where the defendant
> has no opportunity to cross examine the maker of those
> statements. And it's impossible to know whether the
> statements were taken out of context or to explore the nature
> of the statements in any way, which the defendant has the
> right to do under the constitution.  [Exhibit E-69].

On July 18, 2002, the court denied the Motion and provided Reasons for

Judgment.  The trial court concluded,

[T]he statements that Jamie Chautin feared defendant are direct assertions of her state of mind and, thus, they are admissible under Article 803(3) of the Code of Evidence, an exception to the hearsay rule. Further, it is the Court's finding that the statements the defendant threatened to harm Jamie Chautin, Shaun Peck, and Tony Chautin if she did not come back to him indirectly prove her state of mind, as they tend to prove, that her state of mind was one of fear of him and of anticipation that her failure to return to him would trigger violent behavior on his part ... Whether this victim had a loving and harmonious relationship with the defendant or whether she was in fear of him and whether there was a basis for such fear are factors for a jury to decide and this issue is in fact relevant to prove a fact in issue in this case. Therefore, as discussed, this evidence is relevant because it tends to discount defendant's claim of 'accident', and it rebuts his assertion that he and Jamie Chautin were in a harmonious and loving relationship in the months leading up to the shootings which occurred on March 3, 2002.

The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice as it bears directly on Ms. Chautin's death and on her state of mind or emotional attitude toward the defendant, which he raises as issues of fact in support of his defense to the charges herein.

Finally, it is the Court's holding that to protect against misapplication of the extra judicial declarations presented herein, the Court will honor a request by the defendant to a limiting instruction directing the jury to consider the declarant's statement as evidence only of the declarant's state of mind rather than for the truthfulness of any express or implied allegations contained within the statements. *See State v. Brown*, 562 So.2d 868.  [Exhibit F-78-84].

During petitioner's trial in the Twenty-Seventh Judicial District Court, Guilbeau testified on direct examination that he and Jamie Chautin were in a loving relationship in the weeks prior to the March 3, 2002 shooting.  Indeed, he stated that on Valentines Day

4

he had gone to Chautin's place of employment to bring her flowers. [tr. pg. 925].

Moreover, he testified that the couple, who had lived together in the past and had a child

together, were planning to move-in together.

On cross examination, Guilbeau expressly denied that he had been asked to leave

Chautin's employer's premises on Valentines following a confrontation witnessed by

Garcia.  He further denied being found in a storage room by another employee that date

who told him that he could not remain in the storage area because of insurance

regulations and that he would have to leave. [tr. pg. 959-960].

To rebut these claims, the State called several rebuttal witnesses including Anulfo

Antonio Garcia and Stefan Brice Quebedeaux, Garcia's business partner.  Quebedeaux

testified that on Valentine's day he heard Chautin and petitioner arguing and Chautin

asking petitioner to leave the premises.  When he did not hear petitioner leave, and in an

attempt to resolve the situation, Quebedeaux discovered petitioner in the storage area and

explained that people are not normally allowed in that area.   [tr. pg. 1154-1156].

Garcia testified that petitioner came to his place of business on Valentines day,

February 14, 2002, and that petitioner and Jamie Chautin engaged in a loud argument.  He

testified:

> I decided to have it stopped because it was getting too loud. I
> told them to quiet down. I told Eric to leave. It wasn't
> happening so basically while I still had the customer on the
> phone, put him on hold, I yelled for Brice [Garcia's business
> partner] and after that Brice removed Eric from the room ... I
> think one more time he came back in and passed back. ... right

5

after he left he kept calling and calling and calling ... So basically what I did tell him was 'You quit calling over here. You can call here once in the morning, once in the afternoon.' At that point in time he yelled at me that she wasn't busy. Mr. Tony [Chautin's father], Shawn [Chautin's ex-husband] and I didn't leave her anytime to spend with him and his boy. What I told him was like, 'I don't care. I don't want to know. Here's the deal, you're going to call once in the morning and you're going to call once in the afternoon.' Right after that he just sounded pretty sarcastic and said, 'Yes sir, Mr. Tony.' And that was the last I heard of him. [tr. pg. 1146-1147].

As a result of the incident and his conversation with petitioner, Garcia spoke to Chautin about petitioner and told her:  "'I don't want to meddle. I don't want to know. I really don't care but you can't have this. You can't have this man just coming over here all the time.'" He then testified that Chautin responded that she was afraid of petitioner and that "she didn't know if it would stop. If she would stop contact with him he would actually hurt Shawn [her ex-husband] or Mr. Tony [her father]." [tr. pg. 1148]. Moreover, Garcia testified that Chautin told him,  "She was going to be hurt and they were going to be hurt. She told me he said about something he did, 'This is just the beginning. Worse things are to come.'"  [tr. pg. 1149].

In accordance with the ruling on petitioner's Motion in Limine, at the request of the defense, the trial court gave a limiting instruction to the jury as follows: "As to any of the statements of Jamie Chautin which came into evidence through the State's rebuttal witnesses, the jury is to consider those statements only as evidence of the declarant, Jamie Chautin's state of mind, and not for the truthfulness of any facts or assertions within those statements." [tr. pg. 1158, 1224].

Petitioner was found guilty as charged and appealed his conviction to the Third

Circuit Court of Appeals.  Petitioner argued two assignments of error: (1) sufficiency of

the evidence, and (2) trial court error in admitting the hearsay testimony described above.

[Exhibit B-32-44].  On October 8, 2003, the Third Circuit affirmed petitioner's

convictions. *See* Slip Opinion, *State of Louisiana v. Eric John Guilbeau*, 03-372 (La.

App. 3d Cir. 10/8/2003), 855 So.2d 442  (unpublished) [Exhibit H].

On November 1, 2003 petitioner filed a *pro se* writ application in the Louisiana

Supreme Court.  [B-45-55].  On March 8, 2004, the United States Supreme Court decided

*Crawford v. Washington*,  541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) in which

the Court held that "testimonial" hearsay statements of witnesses absent from trial are

admissible only where the declarant is unavailable and the defendant has had a prior

opportunity to cross-examine the witness.  Petitioner's writ application was denied by the

Louisiana Supreme Court without comment eleven days later on March 19, 2004.[3]  *State*

*of Louisiana v. Eric John Guilbeau*, 2003-3135 (La. 3/19/2004), 869 So.2d 848.

On May 5, 2004, petitioner filed an Application for Post-Conviction Relief in the

Twenty-Seventh Judicial District Court raising a single claim for relief:

> Defendant was denied his constitutional right to confront and
> cross examine the witnesses against him because the case
> brought against him was based in part upon hearsay testimony
> of the deceased victim, which included statements made by
> the victim many weeks before the actual offence in this case.

---

[3]Accordingly, because *Crawford* was decided before petitioner's conviction was final there no retroactivity
issue in this case.

This testimony was admitted in violation of the constitution as interpreted by the U.S. Supreme Court's most recent pronouncement on the issue: *Crawford v. Washington*, No. 02-9410, 124 S.Ct. 1354, 158 L.Ed.2d 177 (March 8, 2004). [Exhibit J-142-153].

On June 25, 2004, a hearing was held on the Application for Post-Conviction

Relief. After hearing argument, the trial court denied relief and found:

Our U.S. Supreme Court has changed the rules of the game, so to speak, in the middle of the game and I'm now called upon to make a decision relative to how it affects the trial of Mr. Guilbeau. I read the decision [*Crawford v. Washington*] ... And the first statement that confounds me from the decision is at the end when he says we're going to leave for another day what testimonial is .... What they basically said was this Court using a well founded, long standing exception to the hearsay rule, allowed statements of Jamie Chautin into evidence under Code of Evidence Article 803(3) based upon Jamie Chautin's state of mind.  I vividly recall the argument which was very forcefully presented by Mr. Piccione [petitioner's trial counsel] that Ms. Chautin's state of mind was not the significant avenue that the jury needed to focus on, but Mr. Guilbeau's. I took issue with that then and I take issue with that now. And I do so because I believe you did place, the defense placed, her state of mind at issue when he repeatedly referred to a harmonious relationship having occurred between them and his belief that they were going to get back together and the testimony that could have been presented by her, had he not taken her life, that that was not the case.  Nevertheless, that's where we are. I allowed that evidence in. Mr. Piccione says under *Crawford* because I couldn't cross-examine Jamie Chautin on Mr. Guilbeau's behalf under *Crawford* I get a new trial because you shouldn't have let those statements in. I'm not sure that *Crawford* says that. What *Crawford* says is members of this Court and academics ... have suggested that we revise our doctrine as

presented in [*Ohio v. Roberts*[4]] to make it more historically
traditionally correct. Then Scalia goes back to the Roman law
and he gives us a nice sketch, thumb sketch, of Roman law all
the way up to English common-law until he gets to Sir Walter
Raleigh because he's moving towards what was the law at the
time our Constitution was written. That's when he says well
there's a confrontation clause and the founding fathers
included it because they were concerned with statements
made to mayors, governors, magistrates, police officers. And
since they want to stop that, then we have to do that now with
the reliability standards of [*Ohio v. Roberts*]. It doesn't matter
if it's reliable because reliability is – well, then you're going
to let a judge decide. It's too much discretion so we're going
to give you a rule to follow. But they're still going to make
the judge decide it because I have to decide what's testimonial
and what's not. Because at the end of the day what he said
was we overrule *Roberts* and the confrontation clause trumps
any state laws relative to hearsay exceptions, whether they're
reliable or not, where testimonial evidence is included. *But
testimonial is not in the traditional sense what we look at it,
which is any testimony that comes from the witness stand. He
limited it to ... You have to test by the crucible of cross-
examination statements made to magistrates, to police
officers.* How bizarre is that, that they're not considered
neutral. And what happened in the 1700's, 1776 and prior
thereto, a governor or a mayor or someone would go out and
take a statement, wouldn't bring that person to trial and then
would present those statements as interpreted or written by the
person, investigator, collecting, to the jury. And it placed an
*imprimatur* of well this must be right because it's brought by
the mayor or the governor and maybe that's what they were
trying to avoid because what jury is going to say well must be
right, we got if from the magistrate, from the mayor, from the
governor. So those, I think, are in fact exactly what he talks
about when he says that the members of the court and
academics have suggested that we revise our doctrine to
reflect more accurately the original understanding of the
clause. *And what is testimonial? And he does say we leave for*

---

[4] 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

> *another day what's non-testimonial. We can argue all day*
> *long as to whether he presented three core formulations ....*
> *It's a class of people that you're making these statements to.*
> *And the class of people carries the imprimatur of, for lack of*
> *a better term, officialdom.  That's what they're trying to stop.*
> *So I believe that the statements by Jamie Chautin to Antonio*
> *Garcia are non-testimonial in nature and pursuant to*
> *[Crawford v. Washington] the decision there stated, we're*
> *going to leave to the states the decision on whether to allow*
> *such testimony under well founded exceptions to the hearsay*
> *rule based on reliability. I find it's non-testimonial. I find that*
> *Crawford doesn't apply for the same reasons that I let the*
> *statements in the first time and my reasons for judgement I re-*
> *adopt today. I'm going to deny your application for post-*
> *conviction relief ....*  [*See* Exhibit L-160-164 (Reasons for
> Judgment); Exhibit M (Court Minutes); Exhibit N (complete
> transcript of the hearing); (emphasis supplied)].

On August 31, 2004, petitioner filed an Application for Supervisory Writ of

Review in the Third Circuit Court of Appeal.  [*See* Exhibits (This document precedes the

labeled exhibits and is otherwise unmarked)].   On October 26, 2004, the Third Circuit

denied writs finding,

> The statements at issue were made during a *casual*
> *conversation* and were, therefore, *nontestimonial in nature*.
> Thus, *Crawford v. Washington*, -- U.S. --, 124 S.Ct. 1354
> (2004) is inapplicable to this case. *See State v. Blackstock*,
> 598 S.E.2d 412 (N.C. App. 2004); *Evans v. Luebbers*, 371
> F.3d 438 (8th Cir. (Mo.) 2004).  Accordingly, the trial court
> properly denied Relator's application for post-conviction
> relief.  [*See* Exhibits, Slip Opinion, *State of Louisiana v. Eric*
> *John Guilbeau*, No. KW 04-01194 (La. App. 3d Cir.
> 10/26/2004); (emphasis supplied)].

Thereafter, petitioner applied for writs in the Louisiana Supreme Court. On March

18, 2005, writs were denied without comment.  *State of Louisiana v. Eric John Guilbeau*,

2004-2856 (La. 3/18/2005), 896 So.2d 1001.

Petitioner signed his federal *habeas corpus* petition on July 29, 2005. He argues a single claim for relief:

> "Guilbeau was denied his Sixth Amendment right to a fair an impartial trial when the Trial court allowed the State to produce hearsay testimony at trial in violation of *Crawford v. Washington*, 124 S.Ct. 1354, 158 L.Ed.2d 177 (March 8, 2004)."  [Doc. 1-1, pg. v].

The State has filed an Answer and a Memorandum in Opposition, and has submitted the state court record for this court's review. [rec. doc. 12].  Petitioner has filed a Reply. [rec. doc. 13].  This report and recommendation follows.

After a full review of the record, the undersigned finds that the asserted ground for relief is without merit. Accordingly, for the following reasons,  it is recommended that the petition be **DENIED AND DISMISSED WITH PREJUDICE.**

## LAW AND ANALYSIS

The petitioner filed his federal *habeas corpus* petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and therefore, all of the provisions of that act must be applied.  AEDPA prohibits a federal court from granting an application for *habeas corpus* with respect to any claim that was adjudicated on the merits in state court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The  state court's factual determinations are

presumed correct, but can be rebutted by clear and convincing evidence.  28 U.S.C.

§ 2254(e)(1).

A decision is "contrary to" clearly established Federal law if "the state court

applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases"

or "the state court confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[Supreme Court] precedent."  *Summers v. Dretke*, 431 F.3d 861, 869 (5th Cir. 2005)

quoting *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002) *quoting William*s, 529 U.S.

at 405-406.

Unreasonable applications of clearly established Federal law occur when the state

court, "identifies the correct governing legal principle from [the Supreme Court's]

decisions but unreasonably applies that principle to the facts of [a] petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) *quoting*

*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion

of O'Connor, J.).   "Unreasonable" does not mean merely "incorrect."  *Summers*, 431

F.3d at 869 *citing Foster*, 293 F.3d at 776 citing *Williams*, 529 U.S. at 405-406.  Rather,

"the state court's decision must have been [not only] incorrect or erroneous [but also]

objectively unreasonable."  *Wiggins*, at 520-521, 123 S.Ct. 2527 *quoting Williams,* at 409,

120 S.Ct. 1495.

Petitioner's confrontation clause claim was adjudicated on the merits.  In this case,

both the district court (on collateral review) and the court of appeals identified *Crawford*

*v. Washington* as the guiding principal of law.  In both instances, the courts determined that the complained of testimony was not "testimonial" and therefore its introduction did not violate petitioner's right of confrontation.[5]  Thus, petitioner's claim is properly reviewed under AEDPA standards.

Before the court can determine whether or not the state court's adjudication was unreasonable, it must determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  As shown above, petitioner relies upon *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and cites the following statements by Justice Scalia in support of his argument:

> "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law – as does *Roberts*,[6] and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required:

---

[5]The  district court determined:
> So I believe that *the statements by Jamie Chautin to Antonio Garcia are non-testimonial in nature* and pursuant to [*Crawford v. Washington*] the decision there stated, we're going to leave to the states the decision on whether to allow such testimony under well founded exceptions to the hearsay rule based on reliability. *I find it's non-testimonial. I find that Crawford doesn't apply ....* [*See* Exhibit L-160-164 (Reasons for Judgment); Exhibit M (Court Minutes); Exhibit N (complete transcript of the hearing)].

The Third Circuit determined, "The statements at issue were made during a *casual conversation* and were, *therefore, non-testimonial* in nature. Thus, *Crawford v. Washington*, -- U.S.--, 124 S.Ct. 1354 (2004) is inapplicable...."  [*See* Exhibits, Slip Opinion, *State of Louisiana v. Eric John Guilbeau*, No. KW 04-01194 (La. App. 3d Cir. 10/26/2004); (emphasis supplied)].

[6] *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

13

unavailability and a prior opportunity for cross-examination.
*We leave for another day any effort to spell out a*
*comprehensive definition of 'testimonial.'* Whatever else the
term covers, it applies at a minimum to prior testimony at a
preliminary hearing, before a grand jury, or at a former trial;
and to police interrogations. These are the modern practices
with closest kinship to the abuses at which the Confrontation
Clause was directed." 541 U.S. at 68, 124 S.Ct. at 1374.

Section 2254(d)(1)'s "clearly established" phrase refers to the holdings, as

opposed to the *dicta*, of the United States Supreme Court's decisions as of the time of the

relevant state-court decision.  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146

L.Ed.2d 389 (2000).  Thus, "clearly established Federal law" under § 2254(d)(1) are the

governing legal principles set forth by the Supreme Court at the time the state court

renders its decision. *See Id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698,

122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  In the vast majority of cases, this initial

determination is quite simple; such is not necessarily the case herein.

Petitioner asserts that the decedent's statements contained in Garcia's testimony

were "testimonial" under the United States Supreme Court's decision in *Crawford*, and

therefore Garcia's testimony was inadmissible since petitioner was unable to cross-

examine the deceased victim-declarant.  The difficulty petitioner encounters becomes

obvious upon a close inspection of that part of the *Crawford* opinion he cites in support of

his argument.

Justice Scalia, specifically noted that the issue of what does, and does not,

constitute "testimonial" hearsay would be left open for consideration by the Court on

14

another day.  Moreover, in a footnote associated with the text above, Justice Scalia further

noted, "We acknowledge the Chief Justice's objection, post, at 1378, that our refusal to

articulate a comprehensive definition in this case will cause interim uncertainty." 541

U.S. at 68, 124 S.Ct. at 1374, n.10.  To date, the Supreme Court has not fully answered

the question left open in *Crawford*.[7]  The Supreme Court has not yet determined what

constitutes "testimonial" hearsay outside the context of statements made to law

enforcement personnel[8], much less whether the term includes out-of-court statements

made by a victim-decedent in the context of a purely private conversation.

Therefore, contrary to petitioner's position,  what does and does not constitute

"testimonial" hearsay, and more specifically whether out-of-court statements made by a

victim-decedent in the context of a purely private conversation are "testimonial", is not

"clearly established" by the United States Supreme Court.  *See also United States v.*

*Holmes*, 406 F.3d 337, 347-348 (5th Cir. 2005) (noting that beyond the specific examples

---

[7] The undersigned anticipated that additional guidance would be forthcoming when the Supreme Court granted *certiorari* in two other cases involving alleged "testimonial statements" made to law enforcement personnel during interrogation. [*See Davis v. Washington*, -- U.S. --, 126 S.Ct. 547, 163 L.Ed.2d 458, 2005 WL 1671669 and *Hammon v. Indiana*, -- U.S -- , 126 S.Ct. 552, 163 L.Ed.2d 459, 2005 WL 1914510, 2005 WL 1914510.] Therefore, on April 21, 2006, it was determined that no action would be taken pending the resolution of those cases. [doc. 3]. The Court decided those cases on June 19, 2006. *See Davis v. Washington*, -- U.S. --, 126 S.Ct. 2266, 74 USLW 4356, (2006).  Although the Supreme Court further refined what constitutes "testimonial hearsay" in the context of statements made to law enforcement personnel during interrogation, the Court did not provide any guidance on the issue pending before this court.  To the contrary, the Court expressly noted that, "As in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), therefore, our holding today makes it unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Davis* at 2274, fn. 2.

[8]*Crawford* involved a tape recorded statement made by the petitioner's wife to police, *Davis* involved statements made to a 911 operator who was deemed by the Court to be an agent of law enforcement and hence, the Court considered the operator's acts to be acts of the police, and  *Hammon* involved oral and written statements made to a police officer investigating a domestic abuse call. *Crawford*, 541 U.S. at 38;  *Davis* at 2274, fn. 2.

of "testimonial" statements noted by the Court in *Crawford*, namely, prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and statements made during police interrogations, "the boundaries of testimonial evidence remain unsettled."); *United States v. Crespo-Hernandez*, 2006 WL 1307562 (5th Cir. 2006) (noting that neither the Supreme Court nor the Fifth Circuit have developed a "comprehensive definition of 'testimonial'" statements); *United States v. Gonzalez*, 436 F.3d 560, 576 (5th Cir. 2006) (noting that "the definition of a 'testimonial' statement was left open by *Crawford*", but that the opinion suggests that a testimonial statement is one made during a governmental interrogation or something similar thereto).   Accordingly, under the applicable standard of review, petitioner is not entitled to federal *habeas* relief.

Even if the *Crawford* holding could be construed as a "clearly established" rule of law which supports petitioner's position, in order to prevail, petitioner would still have to show either that the state court rulings directly conflicted with this controlling Supreme Court precedent[9] or that the state court rulings were not only incorrect, but also

---

[9]Disposition of petitioner's claim turns upon a purely legal analysis.  Accordingly, the undersigned has not discussed the "unreasonable determination of the facts in light of the evidence presented" prong as that analysis is clearly inapplicable.

Moreover, under the facts of this case, it is clear that the state courts were not confronted with a set of facts that are materially indistinguishable from the facts presented in *Crawford, Davis* or *Hammon*.  *Crawford* involved taped recorded statements made by the wife of the defendant to investigating police officers, which statements were admitted despite the wife's  state law marital privilege.  *Davis* involved statements made by a domestic abuser's former girlfriend to a 911 operator who was investigating the circumstances surrounding the call, and who was deemed by the Court to be an agent of law enforcement.  The girlfriend could, but did not, appear at trial to testify.  Accordingly, the recorded exchange was played to the jury.  In *Hammon* the wife of the accused gave oral and written statements to a police officer investigating a domestic abuse call.  When the wife failed to appear at trial, the police officer was permitted to recount what the wife had told him during his investigation of the domestic incident, and was permitted to authenticate her written statement given to him in the course of his investigation.   The instant case does not involve statements made to police, law enforcement officials or anyone acting on their behalf, and involves no official or impliedly official interrogation of the declarant.  Rather, this case involves statements made by the deceased victim to her employer during a private conversation prior to her death.  Thus, the "contrary to" prong appears to be inapplicable.  Nevertheless, the undersigned has addressed this prong briefly.

16

unreasonable. This he has not done.

Both the Twenty-Seventh Judicial District Court and the Third Circuit Court of Appeals determined that the statements Jamie Chautin made to Mr. Garcia were non-testimonial and, therefore, that *Crawford* was inapplicable to petitioner's case.  For the following reasons, that decision is not contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court.

*Crawford* draws a distinction between testimonial and non-testimonial hearsay and applies only to the former category of statements.  *See Davis*, 126 S.Ct. at 2273.  Thus, "whether a challenged statement falls within the class of evidence deemed 'testimonial' will generally be outcome-determinative."  *Holmes*, 406 F.3d at 347-348.  Accordingly, in this case, unless the statements attributed to Chautin qualify as "testimonial", *Crawford* is inapplicable and Guilbeau's rights under the Confrontation Clause are not implicated.

As previously discussed, both the *Crawford* and *Davis* courts declined to provide a comprehensive definition of "testimonial" statements.  *Crawford*, 124 S.Ct. at 1374; *Davis* at 2274, fn. 2.  The Court did note, however, that, at a minimum, the term applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Id.*  The Court also provided three potential formulations of the "core class" of testimonial statements but declined to adopt or reject any of them.   The first formulation of testimonial statements consist of "ex parte in-court testimony or its functional equivalent – that is, materials such as affidavits, custodial examinations, prior

17

testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford*, 124 S.Ct. at 1364 (citation omitted).   The second formulation described testimonial statements as consisting of "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."  *Id*. *quoting White v. Illinois*, 502 U.S. 346, 365 (1992).  The third formulation are those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  *Id*. (citation omitted).

In light of these formulations, Chautin's non-custodial, contemporaneous and spontaneous statements to her employer do not qualify as "testimonial".  The statements were not *ex parte* in-court testimony or its equivalent; were not contained in formalized documents such as affidavits, depositions, or prior testimony transcripts and were not made in the context of any custodial examination or official interrogation.  Rather, Chautin's statements were made during a purely private conversation with her employer, Mr. Garcia, under circumstances which would not lead an objective person "reasonably to believe that the statement would be available for use at a later trial."  *See Horton v. Allen* 370 F.3d 75, 84 (1st Cir. 2004) (finding that a co-defendant's statement made during a private conversation with his friend was not testimonial); *McKinney v. Bruce*, 125 Fed.Appx. 947, 950 (10th Cir. 2005) (victim's statements made to his uncle in the uncle's home before his death were not testimonial); *Evans v. Luebbers*, 371 F.3d 438, 444-445 (8th Cir. 2004) (victim's out-of-court statements to various witnesses that she was scared

of petitioner, that she was verbally and physically abused by petitioner, that she intended to divorce petitioner and that she had obtained a protective order against petitioner did "not fit" the *Crawford* definition of testimonial);  *Parle v. Runnels*. 387 F.3d 1030, 1037 (9th Cir. 2004) (victim's entries in her diary portraying the violent relationship she had with the defendant were not testimonial because they were not created "under circumstances which would lead an objective witness reasonably to believe that [they] would be available for use at a later trial."); *United States v. McCullough*, 2005 WL 2649965, *1-2 (6th Cir. 2005) (defendant's non-testifying companion's incriminating statements made in a bar to another bar patron who testified at trial were not testimonial); *Gonzalez*, 436 F.3d at 576 (finding that a statement made while "screaming out in pain to those in the vicinity" does not qualify as testimonial under *Crawford*, because that opinion suggests that a testimonial statement is one made during a governmental interrogation or something similar thereto).[10]

To the contrary, as the State persuasively notes, it would be illogical, unreasonable and absurd for this court to find that Chautin made the statements to Garcia in anticipation of a trial following her murder.  The state court rulings finding Chautin's

_____

[10] See also *United States v. Franklin*, 415 F.3d 537, 545-546 (6th Cir. 2005) (co-defendant's out-of-court statements to his friend which inculpated petitioner were not testimonial); *United States v. Lee*, 374 F.3d 637, 645 (8th Cir. 2004) (co-defendant's statements to his mother while visiting one year before law enforcement contacted mother were not testimonial); *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. (2005) (defendant's statement to government witness not testimonial because "not made to the police or in the course of an official investigation...[nor an attempt] to curry favor or shift the blame ...."); *United States v. Manfre,* 368 F.3d 832, 838 fn. 1 (8th Cir. 2004) (*Crawford* inapplicable to out-of-court statements made by defendant to his brother because they were "made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which *Crawford* speaks."); and  *United States v. Morgan*, 385 F.3d 196, 209 (2nd Cir. 2004) (letter written by co-defendant to her boyfriend "in the privacy of her hotel room" not testimonial).

statements to Garcia non-testimonial do not therefore directly conflict with the Supreme Court's decision in *Crawford*.

This conclusion is buttressed by the Court's language in the *Crawford* decision wherein Justice Scalia distinguishes between "witnesses" who "bear testimony" for Confrontation Clause purposes from those who do not as follows:  "an accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."   This conclusion is further buttressed by the Fifth Circuit's decision in  *Ramirez v. Dretke*, 398 F.3d 691, 695 at fn. 3 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 51,  (U.S. Oct 03,  2005) wherein the court noted that  "[t]here is nothing in *Crawford* to suggest that 'testimonial evidence' includes spontaneous out-of-court statements made outside any arguably judicial or investigatory context." *See also  Summers*, 431 F.3d at 877 (finding that *Crawford* did not control the case because "[t]here is nothing in *Crawford* to suggest that 'testimonial evidence' includes spontaneous out-of-court statements made outside any arguably judicial or investigatory context." ); *Davis*, 126 S.Ct. at 2278 fn. 5 (declining to "dispute that formality is indeed essential to testimonial utterance."); *Gonzalez, supra*.

Moreover, the state court rulings finding Chautin's statements non-testimonial were not unreasonable applications of federal law.  In rejecting petitioner's claim, the Louisiana state courts relied on the fact that the statement was not made to any state or

government official or in the context of any investigation, but rather that the statement was made in the context of a private conversation.  The Fifth Circuit has similarly indicated that those considerations are relevant to the inquiry.  In *Ramirez v. Dretke*, 398 F.3d 691, 695 at fn. 3 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 51,  (U.S. Oct 03,  2005) the Fifth Circuit noted that,

> "In *Crawford v. Washington*, the Supreme Court held that 'testimonial evidence' is not admissible absent a showing that the declarant is unavailable to testify and that there was an opportunity for cross-examination, irrespective of indicia of reliability. 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). While declining to provide a comprehensive explanation of what constitutes testimonial evidence, the Court explained that '[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police investigations.' *Id*. The full reach of *Crawford's* holding remains unclear ... *There is nothing in Crawford to suggest that 'testimonial evidence' includes spontaneous out-of-court statements made outside any arguably judicial or investigatory context."*  (emphasis added)

Indeed the reason that the statements at issue in *Crawford* (and *Davis*) were easily found to be testimonial in nature was that fact that they had been made to law enforcement officers during investigations.  *See Crawford,* 124 S.Ct. at 1364 and 1370; *Davis*, 126 S.Ct. at 2278.

Moreover, the undersigned's research has failed to uncover any cases which support petitioner's position.  To the contrary, like the decisions rendered by the Louisiana state courts in petitioner's case, the jurisprudence from the federal circuit courts which have considered the issue suggest that the question of whether or not

21

hearsay is "testimonial" turns on the context wherein the statement was made, to whom it was made and also on the intent of the declarant.  *See  Horton,* 370 F.3d at 83-84;  *United States v. Summers*, 414 F.3d 1287, 1301-02, (10th Cir. 2005) (noting the "historical background" of the Sixth Amendment requires a "baseline or minimum" definition of testimonial hearsay to include formal statements made to government officers, as well as statements that a reasonable person in the position of the declarant would objectively foresee might be used in an investigation or prosecution of a crime.); *United States v. Cromer*, 389 F.3d 662, 673-674 (6th Cir. 2004); *United States v. Saget*, 377 F.3d 223, 228-229 (2nd Cir. 2004) (statements subject to *Crawford* if they are "knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings.").  The circuits have concluded that the determinative factor common to all the proposed formulations set forth by the *Crawford* court is whether the statement was made under circumstances which would lead an objectively  reasonable declarant to believe or anticipate that the statement would be available for use against an accused at a later trial.[11]  *Summers*, 414 F.3d at 1301-02; *United States v. Hinton*, 423 F.3d 355, 359-360 (3rd Cir. 2005); *Cromer*, 389 F.3d at 675; *Saget*, 377 F.3d at 229.

---

[11]Indeed, even in the context of police interrogation the Supreme Court noted that in order to be deemed "testimonial", the purpose of the police interrogation in which the statement was elicited must have been to establish past events relevant to a later criminal prosecution. *See Davis*, 126 S.Ct. at 2273- 2274.

In the absence of such a finding, the declarant cannot be deemed a "witness" who "bears testimony" within the meaning of the Confrontation Clause.  *See Davis*, 126 S.Ct. at 2273.  Clearly, there was nothing in  Jamie Chautin's statements to Garcia to suggest that she could foresee their use in a later criminal investigation or prosecution.

In sum, the decisions of the Louisiana Courts finding Chautin's statements not to be testimonial in nature and, accordingly, denying relief on petitioner's claim, were not contrary to, nor were they unreasonable applications of, clearly established federal law as determined by the United States Supreme Court.  Petitioner has not shown that the state courts' decisions were contrary to or an incorrect or erroneous application of *Crawford* (or *Davis*), much less an unreasonable application of *Crawford* to the facts presented herein.  Accordingly, under the applicable standard of review, petitioner is not entitled to federal *habeas corpus* relief.

Furthermore, even if Chautin's statements could be deemed "testimonial" as contemplated by *Crawford*, admission of those statements during petitioner's trial did not violate the Confrontation Clause.  Under *Crawford*, the [Confrontation] Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *United States v. Acosta*, 475 F.3d 677, 683 (5th Cir. 2007) *citing Crawford,* 541 U.S. at 59 n. 9; *United States v. Pryor*, 483 F.3d 309 (5th Cir. 2007); *United States v. Rodriguez-Martinez*, 480 F.3d 303, 307 (5th Cir. 2007); *United States v. Hidalgo*, 2007 WL 1108395, *7 (5th Cir. 2007).  Thus, testimonial statements may be

admitted so long as they are not being used to prove the truth of the matter asserted.  *Id.*

The state trial court admitted Chautin's statements to Garcia as evidence of Chautin's state of mind.  Moreover, the court admitted the statements with the limiting instruction that they were not to be considered "for the truthfulness of any facts or assertions within those statements." Juries are presumed to follow limiting instructions. *Acosta*, 475 F.3d at 683 *citing United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002).  Thus, under these circumstances, and more specifically, because Chautin's statements were not admitted to establish the truth of the matters asserted, and the jury was so instructed, the admission of those statements does not contravene *Crawford.   See Acosta*, 475 F.3d at 683 (finding a testimonial statement not admitted for truth of the statement, and subject to a limiting instruction to that effect, did not contravene *Crawford*); *Pryor, Rodriguez-Martinez* and *Hidalgo, supra*.

Moreover, even if Chautin's statements had been admitted for purposes of the truth, their admission, under the circumstances of this case, was permissible because Guilbeau invited the error.  A defendant cannot open the door to inadmissible evidence and then later object to such "invited error."  *Acosta*, 475 F.3d at 683 (citations omitted). Chautin's statements were not presented during the State's case in chief.  Rather, Garcia was called only as a rebuttal witness.  During direct examination of Guilbeau, Guilbeau's counsel elicited testimony that Guilbeau and Chautin were in a harmonious and loving relationship with plans to resume their joint living arrangements.  Moreover, defense

24

counsel specifically elicited testimony regarding Guilbeau's visit to Chautin's place of employment, while bearing flowers for her, on Valentine's Day, shortly before the murder.  This testimony opened the door for admission of the statements, via the testimony of Garcia, to rebut Guilbeau's claims.  Guilbeau therefore cannot now object to any alleged error which he clearly invited.  *See Acosta, supra.*

Additionally, even if the state court's admission of Chautin's statements to Garcia violated Guilbeau's right to confrontation, the error was harmless. "Before a court may grant relief on the basis of a violation of the Confrontation Clause, the court must apply harmless error analysis." *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir.2005); *Pryor, supra.* (applying harmless error analysis to an alleged *Crawford* violation). The test for harmless error in a federal *habeas corpus* action brought by a state prisoner is the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), that is, that the constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 319-320 *quoting Brecht*, 507 U.S. at 623.  Under *Brecht*, "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict." *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir.2005).

In this case, there is no likelihood that the admission of Chautin's statements to Garcia had a substantial and injurious effect on the jury's verdict. The State's evidence against petitioner was substantial.  Petitioner claimed the double murder was either an accident or manslaughter.  However, the testimony adduced at trial, including petitioner's

own testimony, refuted those claims.  Petitioner testified that he went to the victims' home, saw the boyfriend's [Shawn's] truck, and entered the home with his loaded shotgun,  not because he was overwhelmed with rage or emotion as required for manslaughter, but because he was afraid of Chautin's sleeping father and boyfriend.

Further, the forensic evidence demonstrated that the shot which killed Chautin's father was from an unobstructed vantage point with the gun at shoulder level and pointed in a downward direction, and that the shot which killed Chautin was a contact wound from a gun angled thirty degrees downward, not accidental discharges as described by petitioner.[12]  To the extent that the trial boiled down to a swearing match between Guilbeau and the State's witnesses, the alleged testimonial statements could have conceivably tarnished Guilbeau's credibility as a witness in the eyes of the jury. Nevertheless, given the extent of the evidence against Guilbeau, the admission of Chautin's allegedly testimonial statements represented a very small part of what was an otherwise overwhelming accumulation of evidence.  For these reasons, any constitutional error committed by the trial court in admitting Chautin's statements to Garcia was harmless.

---

[12]Specific intent can be inferred from the circumstances, and from the actions of the defendant.  *State v. Harris*, 812 So.2d 612, 618 (La. 2002); *State v. Brown*, 907 So.2d 1, 22 (La. 2005).  Thus, pointing a gun at the victim and firing the gun has been found to be sufficient evidence to infer specific intent to kill or do great bodily harm.  *State v. Brooks*, 839 So.2d 1075, 1079 (La. App. 2d Cir. 2003) citing *State v. Procell*, 365 So.2d 484 (La. 1978).  Moreover, discharging a firearm at close range while aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person.  *Id*. citing *State v. Maxey*, 527 So.2d 551 (La. App. 3d Cir. 1988); *Brown*, 907 So.2d at 22.

Finally, the undersigned notes that *Crawford* did not overrule the "rule of forfeiture by wrongdoing" which extinguishes Confrontation Clause claims when the defendant has procured the witness' absence.  *Crawford,* 541 U.S. at 62; *Davis,* 126 S.Ct. at 2280.  It would appear that the Rule would apply to bar petitioner's claim as it is undisputed that Guilbeau's actions caused Chautin's unavailability for trial.  However, in the absence of controlling post-*Crawford* jurisprudence delineating the applicable bounds of the Rule to cases with similar factual scenarios, the undersigned will do no more than suggest the Rule's possible applicability herein.

In light of the above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual**

27

findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

   **THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 31st  day of July, 2007.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE